```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GILDA SELDON                    :    CIVIL ACTION
                                :
     v.                         :
                                :
NATIONAL RAILROAD PASSENGER     :
CORPORATION                     :    NO. 05-4165
```

MEMORANDUM AND ORDER

McLaughlin, J.                                    September 20, 2006

      This is an employment discrimination case brought by Gilda Seldon, an African-American employee in the Reservations and Sales Department of the defendant, the National Railroad Passenger Corporation ("Amtrak"). Ms. Seldon alleges that on two occasions in 2002 and 2005, she was denied the opportunity to participate in a pilot program allowing Reservations and Sales Agents to work from home. Ms. Seldon alleges that Amtrak's refusal to allow her to participate was illegally motivated by her race and by a desire to retaliate against her for complaining of discrimination, in violation of 42 U.S.C. § 1981.

      Defendant Amtrak has now moved to dismiss, arguing that Amtrak's decision not to allow Ms. Seldon to work from home did not constitute an adverse employment action and is therefore not actionable under section 1981. Amtrak also argues that Ms. Seldon has not adequately pled a claim for retaliation. This Court will deny the motion in part, finding the plaintiff has

adequately pled an adverse employment action, but will grant it as to the plaintiff's retaliation claims.

Ms. Seldon's amended complaint alleges the following facts relevant to the defendant's motion.  In 2002, Amtrak instituted a pilot program that allowed participating Reservations and Sales employees to work from their homes.  Participants in the program were to be chosen on the basis of seniority.  Twenty employees were chosen, five of whom were African-American.  Ms. Seldon alleges she applied for the program, but was not selected even though she had more seniority than three of the employees who were chosen.  Amtrak told Ms. Seldon that she was not selected because the program already had enough participants from her home zip code.  Ms. Seldon alleges that this explanation is pretextual and that Amtrak's decision not to allow her to participate was motivated by her race.  Am. Compl. ¶¶ 6-8.

Ms. Seldon alleges that she complained about Amtrak's decision not to choose her to both the person in charge of the program and Amtrak's Director of Labor Relations, but that nothing was done in response to her complaint.  Significantly, Ms. Seldon does not allege that she told either person that she believed her race played a part in the decision not to select her for the program.  Am. Compl. ¶ 9.

In January 2005, Amtrak selected another 20 employees to participate in the pilot program.  Ms. Seldon was one of the employees chosen, but she declined to participate because "acceptance would have required her to work a schedule that she could not."  Am. Compl. ¶ 10.  Ms. Seldon instead asked to be allowed to fill what she alleges were two vacant positions in the program for the 7:00 A.M. to 3:30 P.M. shift.  Ms. Seldon alleges that she was entitled to one of these open positions because of her seniority, but that Amtrak declined to assign her to this shift because of her race.  Ms. Seldon alleges she complained to Amtrak's Director of Labor Relations about the refusal to allow her to work the shift, but that nothing was done.  Am. Compl. ¶¶ 10-11.

As a result of Amtrak's not allowing her to work the 7:00 to 3:30 shift in the pilot program, Ms. Seldon alleges that she "lost income because of the lost opportunity to earn additional income working so called 'trade days.'"  Am. Compl. ¶ 12.  A "trade day" is a day worked for full pay outside of an employee's regular schedule to substitute for another employee who has taken a day off from work.  Am. Compl. ¶ 13.  Ms. Seldon alleges that, had she been assigned to the 7:00 to 3:30 shift in the pilot program, she would have been able to "work trade days because she would not have had to travel anywhere to do so."  Am. Compl. ¶ 14.

In determining whether these factual allegations are sufficient to state a claim and survive the defendant's motion to dismiss, the Court will accept them as true and construe them in the light most favorable to the plaintiff. H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 249 (1989); Rocks v. City of Phila., 868 F.2d 644, 645 (3d Cir. 1989). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

Ms. Seldon is alleging that Amtrak violated her rights under 42 U.S.C. § 1981. Section 1981 was enacted during the post-Civil War Reconstruction to prohibit, among other wrongs, racial discrimination in the making and enforcement of contracts. Brown v. Phillip Morris Inc., 250 F.3d 789, 798 (3d Cir. 2001). The section applies to employment contracts and provides "a federal remedy against discrimination in private employment on the basis of race." Johnson v. Railway Express Agency, Inc., 421 U.S. 454 (1975).[1]

---

[1] Section 1981 provides that

> [a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains,

The elements of a section 1981 claim are identical to those for a claim of employment discrimination under Title VII. Schurr v. Resorts Int'l Hotel Inc., 196 F.3d 486, 499 (3d Cir. 1999). Title VII cases are governed by the burden-shifting framework set out in McDonnell Douglas v. Green, 411 U.S. 792 (1973). To establish a prima facie case of discrimination, a plaintiff must show: (1) that she is a member of a protected class; (2) that she was subject to an adverse employment action; and (3) that similarly situated members of other racial classes were treated more favorably or that other circumstances exist that give rise to an inference of unlawful discrimination. Jones v. School Dist. of Philadelphia, 198 F.3d 403, 410-12 (3d Cir. 1999). To establish a prima facie case for discriminatory retaliation, a plaintiff must show that: (1) she engaged in protected activity; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action. Moore v. City of Philadelphia, ___ F.3d ___, 2006 WL 2492256 (3d Cir. 2006).

---

    penalties, taxes, licenses and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). In 1992, the statute was amended to clarify that the term "'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

Here, Amtrak argues that its decision in 2002 not to allow Ms. Seldon to participate in the pilot program and work from home and its decision in 2005 not to give Ms. Seldon a particular shift in the pilot program do not rise to the level of "adverse employment actions" and therefore cannot support a claim under section 1981.  Because discrimination and retaliation claims apply different definitions of "adverse employment action," the 2002 and 2005 decisions must be analyzed separately.

The 2002 decision is relevant only to Ms. Seldon's discrimination claim because, according to the allegations of the amended complaint, it was made before Ms. Seldon made any complaints to Amtrak about her treatment, and therefore the decision could not be retaliatory.  For a discrimination claim, an "adverse employment action" is one that is "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment."  Cardenas v. Massey, 269 F.3d 251, 263 (3d Cir. 2001) (quoting Robinson v. City of Pittsburgh, 120 F.3d 1286, 1300 (3d Cir. 1997).

The Court cannot say, from the allegations of the amended complaint, that Amtrak's alleged 2002 refusal to allow Ms. Seldon to work from home was too minor to constitute an adverse employment action.  An employment decision need not result in a change in compensation or job title to constitute an adverse employment action.  Torre v. Casio, Inc., 42 F.3d 825,

6

827, 831 n.7 (3d Cir. 1994).  Job transfers to comparable positions in a less favorable location can form the basis of a discrimination claim.  Jones, 198 F.3d at 41 (holding that the administrative transfer of a teacher which denied him the opportunity to teach his preferred subject could constitute an adverse employment action).  Similarly, failure to transfer an employee to a position to which she was qualified can also constitute an adverse employment action.  Amro v. Boeing Co., 232 F.3d 790, 797 (10th Cir. 2000).  Here, giving the plaintiff the benefit of all reasonable inferences, Ms. Seldon's requested participation in the pilot program sought a "serious and tangible" change in the "terms, conditions or privileges" of her employment and, therefore, Amtrak's allegedly discriminatory refusal to allow her to participate constituted an adverse employment action.

In contrast to the 2002 decision, Amtrak's 2005 decision not to give Ms. Seldon her preferred shift occurred after she allegedly made complaints to Amtrak.  The 2005 decision therefore arguably gives rise to both a discrimination and a retaliation claim.  Until June of this year, both claims would have applied the Cardenas definition of an "adverse employment action," discussed above.  In June, however, the U.S. Supreme Court clarified that the adverse action giving rise to a retaliation claim is not limited to workplace-related or

7

employment-related retaliatory acts and harm.  <u>Burlington Northern and Santa Fe Ry. Co. v. White</u>, 126 S. Ct. 2405, 2414 (2006).  Instead, an employer's acts will give rise to a retaliation claim if "a reasonable employee would have found the challenged action materially adverse, which . . . means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  <u>Id.</u> at 2415.[2]

      Applying these definitions to the 2005 decision, the Court again cannot say that Amtrak's action was too minor to be the basis for a discrimination or a retaliation claim.  The decision here is a much closer one, however.  Amtrak's 2005 decision not to permit Ms. Seldon to work the 7:00 to 3:30 shift seems very close to the type of minor or trivial employer decisions that do not create an actionable claim.  <u>See</u> <u>Robinson</u>, 120 F.3d at 1300.  Construing the pleadings generously, however,

---

[2] The Supreme Court's decision in <u>Burlington Northern</u> was based in large part on the specific statutory language of Title VII.  It is unclear, therefore, whether the holding should apply to retaliation claims under the 42 U.S.C. § 1981.  Title VII contains different statutory language for discrimination claims, which are expressly tied to employment-related actions, and retaliation claims, which are not so restricted.  <u>See</u> <u>Burlington Northern</u> at 2411.  Section 1981, in contrast, does not differentiate between these claims and is limited to claims concerning the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C. § 1981(b).  The Court, however, need not resolve this issue now.  For purposes of this motion, the Court will assume that the broader definition of retaliatory action set out in <u>Burlington Northern</u> applies to the plaintiff's claims.

Ms. Seldon is alleging that Amtrak's decision not to allow her to work the shift for which she was qualified effectively resulted in her being unable to work from home.[3]  At this preliminary stage of the proceedings, the Court cannot say for certain that this decision was not a serious and tangible change in the terms of her employment or a "materially adverse" action.  Accordingly, the Court will deny the motion to dismiss with respect to the plaintiff's claims of discrimination regarding both the 2002 and 2005 decisions concerning the pilot program.

       The Court, however, will grant the defendant's motion to dismiss with respect to the plaintiff's retaliation claim.  To state a retaliation claim, a plaintiff must allege she engaged in "protected activity."  Protected activity includes filing a claim of discrimination or otherwise opposing employment practices made

---

[3]  Ms. Seldon's allegations concerning the lost "trade days" that she would have been able to accrue had she been able to work from home suggest that Amtrak's 2005 decision cost her potential income.  Amtrak vociferously disputes this inference, arguing that Ms. Seldon's access to trade days was not affected by its decision not to let her work from home because all Sales and Reservations have equal access to such days.  Noting that the only way Ms. Seldon could make money from "trade days" is if she worked more such days than she used, Amtrak argues that Ms. Seldon is not entitled to an inference that she would have done so.  Amtrak's argument is misplaced for two reasons.  First, on a motion to dismiss, Ms. Seldon is entitled to have her allegation that she lost trade days from Amtrak's 2005 decision treated as true and is entitled to the reasonable inference that she lost money as a result.  Second, even if Ms. Seldon did not allege she lost compensation from her inability to work from home, such an allegation is not necessary to state an adverse employment action.  Jones, 198 F.3d at 41.

illegal by Title VII.  Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 134 (3d Cir. 2006).  To qualify as protected activity, a plaintiff's opposition to an illegal employment practice must raise the issue of discrimination and identify the allegedly discriminatory practice.  Id., citing Barber v. CSX Distribution Services, 68 F.3d 694, 701-02 (3d Cir. 1995).  Complaints about "unfair treatment in general" or expressions of "dissatisfaction with the fact that someone else was awarded the position" that do not specifically complain of discrimination are not protected activity.  Barber at 701-02.

  Here, Ms. Seldon has not alleged that she ever complained of discrimination to Amtrak.  Ms. Seldon's amended complaint alleges only that she "complained about her non-selection" to the pilot program in 2003 and "complained" again in 2005 when she did not receive the shift she wanted.  Am. Compl. ¶¶ 9, 11.  Even reading these allegations in the light most favorable to the plaintiff, these general expressions of dissatisfaction at her non-selection do not constitute a protected activity and cannot support a claim of retaliation.  Ms. Seldon's retaliation claim must therefore be dismissed.  The Court will dismiss the claim without prejudice to allow Ms. Seldon to plead additional facts in support of her retaliation claim, if any exist.

10

An appropriate Order follows.

```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA


GILDA SELDON                      :     CIVIL ACTION
                                  :
     v.                           :
                                  :
NATIONAL RAILROAD PASSENGER       :
CORPORATION                       :     NO. 05-4165
```

ORDER

AND NOW, this 20th day of September, 2006, upon consideration of Defendant National Railroad Passenger Corporation's Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Docket No. 16), IT IS HEREBY ORDERED that said motion is GRANTED IN PART and DENIED IN PART for the reasons set forth in the accompanying memorandum.

The motion is GRANTED as to the plaintiff's retaliation claim and this claim is DISMISSED. The plaintiff may file an amended complaint on or before October 13, 2006. The motion is DENIED as to the plaintiff's discrimination claims.

BY THE COURT:

/s/ Mary A. McLaughlin
MARY A. McLAUGHLIN, J.