IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GILDA SELDON | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| NATIONAL RAILROAD PASSENGER | : | |
| CORPORATION | : | NO. 05-4165 |

MEMORANDUM AND ORDER

McLaughlin, J.                                              October 24, 2007

      The plaintiff, Gilda Seldon, is an African-American employee in the Reservations and Sales Department of the defendant, the National Railroad Passenger Corporation ("Amtrak"). She alleges that the defendant discriminated against her on the basis of race when it did not select her for a pilot work-from-home program in 2002. The plaintiff has asserted her claim under 42 U.S.C. § 1981.

      The defendant has moved for summary judgment, which the Court shall grant. The plaintiff fails to make a prima facie case of race discrimination under § 1981: Amtrak's non-selection of the plaintiff for the work-from-home program was not an adverse employment action; and the facts do not give rise to an inference of discrimination.

I.  Facts

Viewing the record in the light most favorable to the plaintiff, the Court finds the following facts regarding the plaintiff's employment at Amtrak from 2002 to 2005.[1]

Amtrak launched a pilot telecommuting program in 2001. The program allowed reservations agents to work from home instead of at the call center in Northeast Philadelphia. The agreement between Amtrak and the Transportation Communications International Union allowed Amtrak to use its discretion in selecting participants in the program, "with input from the TCU District Chairman." Brief in Support of Defendant Amtrak's Motion for Summary Judgment Ex. B; Ex. C, Gonnella Dep. Tr. at 42-45.[2]

The plaintiff did not apply for the first group of ten participants, who were selected according to seniority. She did apply for the second group of ten, who were chosen according to seniority and zip code, but she was not selected. Another applicant (the plaintiff's sister-in-law, also African American)

---

[1] On a motion for summary judgment, a court must view the evidence and draw reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Summary judgment is proper if the pleadings and other evidence on the record "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

[2] Hereafter "Def's. Br."

lived in the same zip code and had greater seniority, and so was chosen instead. Of the second group of ten participants in the 2002 pilot program, three had lower seniority than the plaintiff; two of those were African American. Id. Ex. F, Seldon Dep. Tr. at 39; Ex. C, Gonnella Dep. Tr. at 56, 72.

The plaintiff asked Amtrak to reconsider her application to the program and offered to work from a rental property she owned to avoid the zip code conflict. However, a residential tenant occupied the property and the plaintiff would have continued to live at her primary address while working at the rental property. Amtrak refused the plaintiff's request, saying that the point of the program was for employees to work from their own homes, not to have shorter commutes to other locations. Id. Ex. F, Seldon Dep. Tr. at 44, 46-47; Ex. D, Gallello Dep. Tr. at 48-49.

The plaintiff complained about her non-selection to the person in charge of the pilot program, Frank Gallelo, and to Jon Maranda, the Director of the Call Center. Mr. Maranda wrote the plaintiff a letter explaining the zip code limitation. The plaintiff requested an unjust treatment hearing to protest her non-selection for the program, and Amtrak's decision was upheld through two appeals. The plaintiff then submitted her claim to binding arbitration. The Public Law Board reached the same decision, concluding "that Carrier did not act in an

inappropriate manner in this case." Id. Ex. J; Ex. K; Ex. L; Ex. M; Ex. N at 2.

In January 2005, another group of twenty employees joined the pilot program. The plaintiff was selected, but Amtrak offered that group only a Wednesday-Sunday afternoon shift (the 2002 pilot program had been a 7:00 A.M. to 3:30 P.M., Monday-Friday shift). The plaintiff did not want to work the afternoon shift. She asked to be assigned to the earlier shift, claiming that there were several vacancies in the morning shift of the work-at-home program, but Amtrak denied her request. Frank Gallello told the plaintiff that the point of the second pilot group was to test how the program worked with the afternoon shift, and that the morning shift for the work-at-home program had not had any posted openings since 2002, even though other employees had requested it. The spots the plaintiff describes as vacancies were created by three of the initial pilot group employees leaving the program and not being replaced. Id. Ex. D, Gallello Dep. Tr. at 52, 55; Ex. F., Seldon Dep. Tr. at 60, 63, 66, 72.

II. Analysis

The plaintiff alleges that the defendant violated 42 U.S.C. § 1981 by discriminating against her on the basis of race. She claims that Amtrak's decision not to select her for the pilot

4

work-from-home program was racially motivated, and that any non-racial reasons Amtrak provides are false and pretextual.

The elements of a claim for racially based employment discrimination under § 1981 are identical to the elements for an employment discrimination claim under Title VII. <u>Schurr v. Resorts Int'l Hotel, Inc.</u>, 196 F.3d 489, 489 (3d Cir. 1999). Title VII claim analysis is laid out in <u>McDonnell Douglas v. Green</u>, 411 U.S. 792 (1973). The plaintiff must first establish a prima facie case of discrimination. If the plaintiff can establish a prima facie case, then the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the challenged employment action. If the defendant can do so, then the burden shifts back to the plaintiff to show that the defendant's articulated reason is actually a pretext for discrimination. <u>Id.</u> at 410.

To establish a prima facie case of discrimination, a plaintiff must show: (1) that she is a member of a protected class; (2) that she was subject to an adverse employment action; and (3) that similarly situated members of other racial classes were treated more favorably or that other circumstances exist that give rise to an inference of unlawful discrimination. <u>Jones v. School Dist. of Phila.</u>, 198 F.3d 403, 410-12 (3d Cir. 1999).

The parties do not dispute that the plaintiff, an African-American woman, is a member of a protected class. The

defendant argues that the plaintiff was not subject to an adverse employment action when she was not selected for the work-from-home program, and that the circumstances of her non-selection do not give rise to an inference of unlawful discrimination. The Court agrees.

### A. Adverse Employment Action

According to the United States Court of Appeals for the Third Circuit, an adverse employment action is one that is "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." Cardenas v. Massey, 269 F.3d 251, 263 (3d Cir. 2001) (quoting Robinson v. City of Pittsburgh, 120 F.3d 1286, 1300 (3d Cir. 1997)).

An employment decision may be an adverse employment action even though there is no change in an employee's compensation. See Torre v. Casio, Inc., 42 F.3d 825, 831 n.7 (3d Cir. 1994). Job transfers to comparable positions in a less favorable location can also form the basis of a discrimination claim. See Jones, 198 F.3d at 41 (holding that the administrative transfer of a teacher which denied him the opportunity to teach his preferred subject could constitute an adverse employment action). Similarly, failure to transfer an employee to a position to which she was qualified can also

constitute an adverse employment action. <u>Amro v. Boeing Co.</u>, 232 F.3d 790, 797 (10th Cir. 2000).

However, all of these cases involve a significant change to the conditions of employment -- a change in the subject matter taught or a change in the expected progression through the workplace hierarchy. The plaintiff has not provided sufficient evidence that Amtrak's refusal to allow her into a small pilot program that would alter only the location of her work -- not the job she did, not the hours she worked, not the compensation she received -- is such a significant change.

The United States Court of Appeals for the Third Circuit has not addressed the precise question of whether denial of "work-from-home" status is an adverse employment action, but district courts in other jurisdictions have consistently held that it is not. See <u>Homburg v. UPS, Inc.</u>, 2006 WL 2092457, at *9 (D. Kan. July 27, 2006) (holding that the denial of a request to work from home is not an adverse employment action and analogizing work-from-home status to commuting as a personal preference of the employee); <u>Daniels v. Fed. Reserve Bank of Chi.</u>, 2006 WL 861969, at *12 (N.D. Ill. Mar. 31, 2006) (quoting <u>Grube v. Lau Indus. Inc.</u>, 257 F.3d 723, 728 (7th Cir. 2001) (concluding that a manager's refusal to permit an employee to work from home was not an adverse employment action, and quoting the Seventh Circuit: "Title VII simply was never intended to be used as a vehicle for

7

an employee to complain about the hours she is scheduled to work."); Ashton v. AT&T Corp., 2005 WL 2320899, at *6 (D.N.J. Sept. 22, 2005) ("[D]enial of Plaintiff's request to work from home does not constitute a 'significant change' in employment as defined by the Supreme Court.  Plaintiff's benefits, salary, status and duties were not altered with the Defendant's denial of her request to remain at home."); Cruz v. Perry, 2003 WL 1719995, at *6 (N.D. Ill. Mar. 31, 2003) (holding that an employer's refusal to allow the plaintiff to participate in a flexible work-from-home program did not rise to the level of an adverse employment action and observing that "[n]ot everything that makes an employee unhappy is an actionable adverse action").

   The plaintiff asserts that Amtrak's decision not to select her for the 2002 pilot program reduced her access to "trade days," thereby altering the terms and conditions of her employment.  An Amtrak employee who wants to take a day off may trade her shift to another employee; employees make these arrangements themselves, without management involvement. According to the plaintiff, she did not work a large number of trade days during the relevant period because she had a long commute from her home in Mt. Airy to the Amtrak call center in Northeast Philadelphia; had she been in the program, she could have avoided the commute.  Amtrak's decision, she argues, had a "negative impact on her ability to increase her income" through

8

working trade days, and therefore constitutes an adverse employment action. Def's. Br. Ex. E, Miller Dep. Tr. at 30; Ex. F, Seldon Dep. Tr. at 75, 87, 91-92; Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment at 9.[3]

The United States Court of Appeals for the Third Circuit has observed that the key to an adverse employment action inquiry is whether the action is "[materially] adverse in the right way. In particular, it must not arise from the employee's individual preferences, and must be job related in the appropriate sense." Fallon v. Meissner, 66 Fed. App'x 348, 351-52 (3d Cir. 2003) (internal quotations omitted).

The plaintiff's desire to work from home is such an "individual preference." The plaintiff claims that if the defendant had selected her, she would have been able to work more trade days. Participants in the pilot program did not get preferential treatment with regard to trade days, because Amtrak's management played no role in assigning them. Some pilot program participants worked a large number of trade days between November 2002 and November 2006 (two worked more than 120 days); many worked fewer than twenty days, and nine of the twenty employees worked no trade days at all in the four-year period. Def's Br. Ex. F., Seldon Dep. Tr. at 87, 91-92; Plf's. Opp. Ex. 2.

---

[3] Hereafter "Plf's. Opp."

9

Although it might have been easier for the plaintiff to work trade days had she been working from home, her access did not change when Amtrak did not select her for the pilot program. It would have been easier for the plaintiff to work trade days if she lived around the corner from the call center in Northeast Philadelphia instead of in Mt. Airy, but her access to those days stays the same regardless of her location. It is entirely understandable that the plaintiff was reluctant to spend more of her time commuting in order to work trade days, but Amtrak is not responsible for alleviating her commute. The Third Circuit Court of Appeals has held that issues like commute or location of employment are ones of personal preference and are not "job related in the appropriate sense." Fallon, 66 Fed App'x at 352. The plaintiff's claim about access to trade days is fundamentally a claim about her commute and the location of her employment, and therefore is not "job related in the appropriate sense." Id.

The plaintiff's non-selection for the pilot program was not an adverse employment action because was no change to the terms, conditions, or privileges of her employment.[4]

---

[4] The work-from-home program was a pilot program, negotiated between Amtrak and the Transportation Communication International Union (TCU) to give Amtrak a high degree of discretion in choosing participants. Def's. Br. Ex. D., Gallello Dep. Tr. at 6-10. "It is not an adverse employment action to refuse to grant an employee a discretionary benefit to which that employee is not necessarily entitled." Haas v. Zurich N. Am., 2006 WL 2849699, at *4 (N.D. Ill. Sept. 29, 1006). The plaintiff has provided no evidence to suggest that Amtrak's management should have placed

B. <u>Inference of Discrimination</u>

The plaintiff claims that the following factors permit an inference of race discrimination:

First, that Amtrak used zip code and seniority as factors in her non-selection and selected three participants with less seniority than the plaintiff.

Second, that Amtrak chose two white employees from the same zip code to participate in the 2002 program.

Third, that Amtrak allowed a white employee to participate in the 2002 program while she worked from her son's house, but would not allow the plaintiff to work from her rental property to avoid the zip code conflict.

The plaintiff also claims that the defendant provided inconsistent reasons for why it had not selected the plaintiff to participate in the 2002 pilot program, including statements regarding the effect of the plaintiff's disciplinary record on her selection for the program. Plf's. Opp. at 9, 11.

First, the plaintiff contends that it is disputed whether the zip code and seniority criteria were applied fairly.

---

her in the pilot program pursuant to the agreement between Amtrak and the TCU. Participation in the program was a "discretionary benefit," and Amtrak's non-selection of the plaintiff for the 2002 pilot program does not constitute an adverse employment action.

11

But Amtrak chose its criteria for the program and stuck to them. The criterion for the first group of ten was seniority; the plaintiff did not apply. The criteria for the second group of ten were seniority and zip code, and Amtrak filled the position allotted to the plaintiff's zip code with someone more senior than the plaintiff. Of the three participants with less seniority than the plaintiff who were selected for the second group, all were from different zip codes and two were African American. Def's. Br. Ex. D, Gallello Dep. Tr. at 20-24, 31-32; Ex. F., Seldon Dep. Tr. at 32, 56-57.

It is hard to see how Amtrak's selections could give rise to an inference of discrimination. See Philips-Clark v. Phila. Housing Auth., 2007 WL 603039, at *6 & n.10 (E.D. Pa. Feb. 22, 2007) (noting that the court must consider all available comparators, including those of the same race as plaintiff, in determining whether an adverse employment action was motivated by race); Hinshillwood v. Cty. of Montgomery, 2002 WL 253940, at *9 (E.D. Pa. Feb. 20, 2002) (finding that the plaintiff failed to establish a prima facie case under § 1981 when both African Americans and whites received favorable treatment and there was no evidence that the plaintiff was treated differently because of his race). Amtrak established the criteria for the program and chose employees based on that criteria. The fact that several African

American employees were chosen undercuts the plaintiff's claim that the decision was motivated by race.

Second, the plaintiff claims that Amtrak chose two white employees who lived in the same zip code to participate in the 2002 program, in violation of the stated criteria (zip code and seniority) and as evidence that white employees were treated differently. The two white employees living in the same zip code were husband and wife (the Ketels), and they were selected for the first group of ten in the pilot program. For that group, zip code was not a factor, only seniority. The plaintiff did not apply with that group of ten, so there was no way she could have been selected when the only factor considered was seniority. Def's. Br. Ex. C, Gonnella Dep. Tr. at 61; Ex. D, Gallello Dep. Tr. at 33-34; Ex. F, Seldon Dep. Tr. at 39.

Third, the plaintiff claims that a white employee, Joann DiBona, received preferential treatment when she was allowed to work from her son's house and the plaintiff was not allowed to work from her rental property. However, Ms. DiBona listed her son's address as her own primary address on her employment forms with Amtrak. Amtrak used the address on file for Ms. DiBona's selection, and the site inspection and installation of work-from-home equipment raised no questions about whether the house was her primary residence or not. Even if it was a mistake on Amtrak's part, because of the policy of using only an employee's primary

13

residence, Ms. DiBona's selection does not support the plaintiff's claim of preferential treatment for white employees. Id. Ex. C, Gonnella Dep. Tr. at 74-78.

The plaintiff also argues that Amtrak has given contradictory reasons for her non-selection. After her unjust treatment hearing, the plaintiff received a letter from Bob Cook, Manager of Call Center Operations. Id. Ex. K. Mr. Cook observed that LaVerne Miller, Amtrak's Director of Labor Relations, had reviewed the disciplinary records of all the employees who applied for the pilot program and had determined that even if the plaintiff had been the first in her zip code, she would not have been selected because of job performance issues. Mr. Miller had no role in the selection of employees for the pilot program, and was involved only in the investigation of the plaintiff's non-selection prompted by her claim of unjust treatment. In addition, the letter that the plaintiff received from Mr. Cook treats the zip code conflict as the reason the plaintiff was not selected (as opposed to her disciplinary history, which is a reason she "would not have been selected" even if zip code hadn't been the first factor). Plf's. Opp. Ex. 3, Miller Dep. Tr. at 17-30; Def's. Br. Ex. K at 3.

Although Frank Gallello, the director of the work-from-home program, testified that discipline and attendance records were considered in making selections for the program, it appears

14

that the investigation into disciplinary records happened after the initial selection based on zip code. Gallello testified that disciplinary history was "not an issue for anyone" selected in the program, suggesting that the initial selection based on seniority and zip code had been followed by a later examination of discipline and attendance files. Pl's. Br. Ex. 4, Gallello Dep. Tr. at 17-25.

That the plaintiff would have been barred from the program because of her disciplinary history if she had not already been disqualified because of her zip code does not mean that Amtrak has given contradictory reasons for her non-selection, nor does it give rise to an inference of discrimination.

None of the four examples the plaintiff identifies support an inference of race discrimination. In addition, the Court will consider Amtrak's selection of the plaintiff for the 2005 work-from-home program when evaluating her race discrimination claim.[5] The 2005 program was posted as an afternoon shift with weekday rest days; the plaintiff applied for the program and Amtrak selected her. The plaintiff then requested that she receive a morning shift with weekend rest days (in effect, requesting that she be allowed to join the 2002 pilot program post hoc). Amtrak refused her request, because the point

---

[5] Although the plaintiff has dropped her previous retaliation claim related to the 2005 program, it is highly relevant to her discrimination case.

15

of the program was to try the work-from-home strategy with a different shift.  Although the plaintiff has no remaining claims dealing with the 2005 program, the fact that she was selected for, and refused her place in, the work-from-home program undercuts her discrimination claim.  Def's. Br. Ex. F, Seldon Dep. Tr. at 60-63; Ex. D, Gallello Dep. Tr. at 55-59.

The plaintiff has not made out a prima facie case of race discrimination under 42 U.S.C. § 1981.  Viewing the evidence in the light most favorable to the plaintiff, she has not established that her non-selection for Amtrak's pilot work-from-home program was an adverse employment action, and the evidence does not support her claim that Amtrak's treatment of her gives rise to an inference of race discrimination.  Therefore, the Court shall grant defendant Amtrak's motion for summary judgment.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GILDA SELDON | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| NATIONAL RAILROAD PASSENGER | : | |
| CORPORATION | : | NO. 05-4165 |

ORDER

AND NOW, this 24th day of October, 2007, upon consideration of the defendant's motion for summary judgment (Docket No. 40), the plaintiff's opposition, and the defendant's reply thereto, and after oral argument on September 25, 2007, IT IS HEREBY ORDERED that the motion is GRANTED for the reasons set forth in the accompanying memorandum.  Judgment is hereby entered in favor of the defendant, and against the plaintiff.

This case is closed.

BY THE COURT:

MARY A. McLAUGHLIN, J.